We'll call the next case which is Viola v. United States Department of Justice. This is case numbers 18-2573 and 22-2186. Is there going to be an introduction by the supervising attorney here when we get when we get to our positions? There can be your honor. Yeah why don't why don't you can see we introduce law clerks so we can introduce a law student as well. When you're ready. Good morning your honors. Dave Roth from Wigan and Dana. I'm the supervising attorney for Alan Chen who's going to be presenting the argument today. I'm happy to answer any questions but I'm sure Mr. Chen will be able to address all your concerns. Thank you very much. Mr. Chen, how many minutes would you like to reserve for rebuttal? Three minutes please your honor. Sure. Good morning. May it please the court. Your honor, Alan Chen, counsel for appellant Anthony Viola. For about a decade now, Mr. Viola has sought to use FOIA to learn more about suspected prosecutorial misconduct committed in a joint federal and state task force's investigation of him for mortgage fraud. But despite inadequate searches and Ipsy Dixit claims to exemption by the government, the district court ruled against Mr. Viola below. And those decisions should be reversed for three reasons. First, the district court's summary judgment order for the Justice Department defendants did not have any accompanying analysis. The court analysis should have been in there. Yes, your honor. This court has said repeatedly in cases like Coastal States as well as Vedeno that summary judgment orders and all but the most trivially of cases should contain a statement of the legal bases and the facts necessary to support the district court's conclusion. And that's true even for legal questions, which of course this court reviews de novo because some explanation by the district court is both necessary and helpful for this court to refine the issues presented forward. So if we break that down, there's basically three parts of the district court orders, I can tell. I can see the search, segregability, and then exemptions. The district court says the search was adequate, says reasonable segregability. Those are minimal explanations, but they seem to be explanations. It seems that your point is best taken with respect to the various FOIA exemptions where the district court said and one or more of the exemptions may apply. But you seem to be arguing that that that the district court order is inadequate in all respects, including adequacy of the search and reasonable segregability. Isn't your argument strongest with respect to the exemptions and not adequacy of the search, which was deemed adequate, and segregability, which was also deemed adequate? Your honor, we agree that the argument carries weight with the exemptions, but we think that it applies to all of the issues that we argue. For the reason that FOIA places a heavy burden on the government to justify withholding documents for disclosure, yes, but also that its searches were reasonable. I believe the words are beyond a material doubt that they've conducted reasonable searches. And the district court is required to conduct a novo review of the government's affidavit supporting that without further explanation. It seems like... Doesn't the Hardy affidavit or declaration pretty much speak for itself? It's a 60 page description with footnotes and technical terms. I mean, I would read this and say it's adequate. Isn't that sufficient? But you have to go through with a fine tooth comb. It's just huge. And then there's two other affidavits as well. What do you want the district court to do to just parrot what's in here? Your Honor, we'd like to separate two points. We think that the government's affidavits in this matter have also not been sufficient, but even if they were, the district court can't simply point to the list of affidavits submitted by the government and say, conclusorily, I read these and they satisfy the legal burden. There has to be additional analysis. Isn't that sufficient? Yes, Your Honor, we think they're insufficient on several points. We can begin with the searches. We think that the Justice Department defendants have not adequately justified their failure to conduct a search reasonably designed to retrieve all responsive materials to Mr. Villa's request. Within the department? Or are you talking about the task force? Both, Your Honor. Because with respect to the task force, the district court of the District of Columbia pretty much shut the door on that. Your Honor, we respectfully disagree. We don't think that the district court of D.C.'s opinion is preclusive on this matter because, as this court is no doubt aware, issue preclusion requires the same issue to be litigated, and frankly, it wasn't. In the D.D.C. case, not only was it a different request based on an entirely different set of documents, the district court there also explicitly stated that part of the reason supporting its finding on the searching the task force issue was that the executive office of the U.S. attorneys had said, if there were any documents held by the task force, they would have been turned up in the search that the EEOUSA did conduct. No such statement by the government in its affidavits exists in this matter. In fact, the opposite, actually. The FBI says in its affidavits that, look, we didn't find the documents that Mr. Villa was talking about. If they exist, they might be in the task force, and then didn't justify why it didn't go on to search the task force. And we think that, at a minimum, if the government's not going to search the task force, which we argue it should, it should have to explain why. In this court's- Did they have the task force records under their control at the time, or were they solely with the task force? Your Honor, Mr. Villa has presented enough evidence for a finding that the task force records were certainly in the government's possession when they were created and when they were used in this prosecution. But it is the government's burden to show, beyond a material doubt, that the legal test for possession is no longer met. As this court pointed to a D.C. dealt with essentially the same issue with respect there to, I think it was a private software vendor. And the court had held that the government's affidavit, just being entirely silent to the details about its relationship to this vendor, was insufficient for a conclusion that it did not have these documents in its possession, and therefore was not required- So the hallmark, the first part of whether something is an agency record, is created or obtained, right? There's other factors. It gets very soupy after that. But we know, at least, that it's created or obtained. What has your client done to- I mean, or what evidence is there, if we put the burden on the government, that the FBI created any of the task force documents or obtained any of the task force documents? Because I don't know that it's fair to read obtained as have access to. Because if we do that, then any information that anyone voluntarily shares with the federal government, that they have access to, becomes foyable. And that feels a little strange. Yes, Your Honor. So with respect to the first point created, we think it's inarguable that much of the evidence held by the task force was created by the FBI investigators who were working hand in hand with the task force during the investigation and prosecution of Mr. Fielder. But you're saying much of the evidence that's in the hands of the task force? Yes, Your Honor. Were you trying to get documents directly from the task force? Your Honor, we're asking for two things with respect to the task force. We're asking that the FBI be directed to search the task force for agency records it might be holding. Well, the District Court of Columbia already said you're not getting that. Yes, Your Honor. There's no right to that. Our second claim is, of course, that the task force is itself a federal agency. But you never served a FOIA request on the task force. No, Your Honor, we didn't. So how would you even have a right to get documents from them? Your Honor, that wasn't addressed by the task force in its briefing below. We argue that that point is waived. Well, it's a matter of whether there's any jurisdiction over the task force here. Under the statute, you know, the whole basis for bringing you into court is that you've not complied with a FOIA request. And if none has been served, I don't know why the task force is even here. That's why I asked you if you're that the FBI has under its dominion and control, as opposed to task force records that are with the task force. That's exactly why I asked that question. Yes, Your Honor. So as this court said in McDonnell v. U.S., administrative exhaustion of the FOIA request itself is non-jurisdictional and can be waived. This is not a matter of administrative exhaustion. This is a matter of whether there's any right under the federal statute to bring them into court. And I would think unless they've been served with a FOIA request, then they haven't failed to comply. I don't think there's any jurisdiction. So on jurisdiction, you know, one question that crossed my mind, and we didn't preview this for you, so I hate to catch a cold, but I might catch a cold. And that is this, that the FOIA statute basically says, if you want to sue, you can sue in a variety of courts, with the default always being in the district court for the District of Columbia. But it says can sue in the district in which the FOIA complainant resides. Now, determining the residency of a prisoner is a bit tricky, right? Because residency historically involves some degree of choice, and prisoners don't always get to choose where they're incarcerated. But I guess my question is, it looks like he used to live in Ohio, he was incarcerated in Pennsylvania, but then upon his release, he went back to Ohio. So if our jurisdiction, or if the district, if jurisdiction depends on residency, why shouldn't we say that actually it's the Northern District of Ohio that has this, as opposed to the Western District of Pennsylvania? Because he involved no choice coming to the Western District of Pennsylvania, unless he did, unless he requested to go to to a specific prison in Pennsylvania. What do you say? I'm sorry to catch a cold, but what do you say on this? Yes, sir, and I think the first thing to say is that this argument was not raised by either of the defendants. But it's jurisdictional. Assume with me it's jurisdictional. So even an unraised argument that's jurisdictional, we have to, you know, appraise our own subject matter jurisdictions. So yes, you're true, it hasn't been raised. But the secondary point is it might be jurisdictional. So if it is, what do you think now? Your Honor, the FOIA statute does say residence. And Mr. Viola was incarcerated at the time in the Western District of Pennsylvania in a federal correctional facility. He brought the suit in good faith on that basis. And, you know, I think there's precedent from the D.C. Circuit saying that prisoners can be considered for other purposes to be residences of the places where they're incarcerated. Your Honor, I think that getting back to the question of the affidavits, another error that was committed by the district court below with respect to now the task force defendants is that they unambiguously, both the magistrate judge and the district court, by adopting the magistrate judge's recommendation, considered these affidavits submitted by the task force from various private employees who had worked for the task force. On a 12B6 motion, we think that's a pretty basic error and warrants reversal on that basis. Taking all of the well-pleaded allegations in Mr. Viola's complaint is true, liberally construed, befitting his status as a pro se litigant in this matter. We think that he has put enough into the record to, he has alleged enough in his complaint, excuse me, to survive a 12B6 on this motion and the affidavits were improperly considered. At the very least, you would like us to remand for the district court to put together a more fulsome explanation of why she is accepting what's in these affidavits? At the very least, your honor, so we think we win even on the merits of the exemptions and the searches and we think that it would be within this court's power to enter an order on that basis. But if this court feels that it can't do so, one reason might be is that there's not enough of a record created by both the government's affidavits, which we think were insufficient on the searches, on the exemptions, and there's a segregability point, but then also the district court's explanation on those issues. Does the district court have to examine the documents? Seems to me to be very hard to rubber stamp, if you will, the exemptions as fitting within proper exemptions and the documents fitting within exemptions unless you examine them. But I don't think the court has an obligation, but under statute, the court can give substantial weight to the affidavit. I mean, the statute specifically says the court gives substantial weight to the affidavits, which is what the district court did here. I'm just wondering, and the statute says may look at the documents. It looks like that a district court in this situation and giving substantial weight is what you did. Your honor, I see that my time has expired. So we think it's important to separate two issues. One, whether or not there was enough explanation in the affidavits for the district court to even render a decision, and then second, whether or not its decision, of course, was then correct based on what was in those affidavits. And so how much the district court is to defer to the government's representations is, of course, relevant to that second point, but we think it was error to even reach that point because the district court did not have enough of a basis on which to even make a determination about whether or not, for example, the searches were adequate or the segregability determinations were well made or the exemptions were properly claimed. Thank you, your honor. I'd be happy to answer more of those questions on rebuttal. Thank you. Good morning, your honor. May it please the court. Daniel Winnick for the federal government. Happy to start wherever the court would like, but if the court doesn't have a different preference, I'll start with the adequacy of the district court's explanation. Yeah, you know, we're talking about two paragraphs. The initial, and I'll say rubber stamping, it's fine, one paragraph, and then later after it comes back because they're voluntary remand, agreed upon a remand, because there are more documents. And after we had issued a briefing order kind of saying, you know, doesn't the district court have to do more? The district court then issues another order with a one paragraph saying, it's all well and good. I mean, is a rubber stamp really the, that's not the standard. And that's basically what the district court did, didn't it? So with respect, your honor, I mean, what the court said in Vedino, and I think it's also clear from the later decisions applying Vedino, is that a district court in granting summary judgment has to say the grounds on which it's granting it. So in, for example, hoaxed Celanese corporation, the court applied Vedino where a court hadn't made clear whether it was ruling on the merits or because an argument was waived. There, it wasn't clear at all what the district court did. Here, I think it's clear what the district court ruled. I agree there's not an explanation for it. I agree it would have been better if it was fully explained, but it is clear from the district court's rulings what the district court ruled, and that's all that's required. So, I mean, are you sure it's clear with respect to the exemptions? I agree, your honor, that it doesn't say which exemption applies to each document, but it is clear in ruling that the documents are exempt from production. So, I mean, so in terms of each exemption, are we supposed to interpret the one or more exemptions, which is a disjunctive, right? Sometimes there's more. Do we know when it's more? Do we know if it's only one or do we know if it's the full more? So at least with respect to the documents for the excerpts of the documents for which multiple exemptions are we really know which exemption the district court relied on, or are we supposed to assume that it's everything, that the rubber stamping is complete? So, I agree, your honor, it's not clear from the ruling which exemption the court applied to each document, but I do want to sort of step back and quibble with the phrase rubber stamp. I realize and I agree these are thinly reasoned decisions, right, but they are decisions and the district court did say it engaged in a thorough review and consideration of the documents and arguments presented by the parties, and I do think it's worth noting district courts address the FOIA litigation have a difficult task, right? These are cases involving voluminous records. There were, in this case, hundreds of pages of, you know, declarations and Vaughn indices alone, and I don't think any court has said, certainly this court hasn't, that district courts in FOIA litigation have to do a sort of document by document review. I mean, that would turn district court decisions in these cases into another version of the Vaughn index. So, I certainly don't think, if the court were to remand on this I certainly don't think it should say that what the district court had to do was go document by document and say... Vaughn entry by Vaughn entry. Right, it'd say, you know, exemption 7c as to this one and 70 as to that one, and I do think, you know, that's... The government be able to do that? I mean, when you submit your affidavit, the government's in a wonderful position to do that, and you didn't do it here. With respect, your honor, I think it did. I mean, the declarations that the Vaughn indices say document by document which exemptions were being asserted, and as to some documents, it's multiple exemptions, and so, you know, part of what the district court... I mean, if the district court had written a fuller decision with lots of pages of explanation, I think it still would have been proper to say, you know, as to this set of documents, I think either this exemption applies or that exemption applies, and I don't think the court would have said that. It bothers me it hasn't been highlighted that much by Mr. Channel in the brief. The fact that part of the search was given to the assistant U.S. attorney who was a prosecuting attorney in the case, and there's a good faith obligation to conduct a reasonable search. The search has to be conducted in good faith. It strikes me as maybe not being odd, but inconsistent with the obligation of doing a search in good faith to put the prosecutor who, and here's their allegations of prosecutorial misconduct against the same prosecutor, let that prosecutor conduct a search. I understand that search was supplemental, but it had to have some gravitas to it or else the be it supplemental or not. I'm troubled by the fact that it was left to the prosecuting U.S. attorney or assistant U.S. attorney to conduct the search. It seems like a built-in problem. I'm at a loss to find out why you would do, not you personally, obviously, but why the government would do that. Well, two points, Your Honor. First, the AUSA declaration explains that even that supplemental part of the search was done by the AUSA together with his legal assistant, and part of it was done, I think it says, just by the legal assistant. So I don't think there's a to think that this was left to the AUSA on his own to look at his emails or something like that. It says the legal assistant was involved who presumably didn't have those sorts of potential conflicts. But second, I would stress this was the suspenders part of built-in suspenders. I mean, the principal search was for the EOUSA to go to the U.S. attorney's office, identify the FOIA contact and say, search your case management system, find the files from this case. That's happened. They got all the files and looked at them. And so it really was just sort of supplemental to that to say, to make sure we're not missing anything, go check the email inbox. And again, that was done by the assistant as well as the AUSA. With respect to the adequacy of the search for the FBI, typically what the D.C. Circuit at least expects is to basically do a very kind of we might think would be likely to have the relevant information. And these are the ones that we're going to search. No. And then close the loop. No other ones would be relevant. The FBI declaration just says we have a central record system. We searched it. I'm pretty sure that the FBI had more record systems than the central record system. And I'm pretty sure that there's no explanation for why those other record systems, it would be unreasonable to expect any of them to have any information in response to any of these FOIA requests. So at a minimum, isn't the Hardy Declaration sufficient for not closing the loop? If we're in the D.C. Circuit, I think they would say definitely, but maybe you disagree. I do disagree, Your Honor. I would point to the language in the declaration that says the CRS is the FBI system, definite article, the FBI system. There's more than one system. I think they have about 22 systems. When I checked on their disclosures, they have to disclose what their systems are. Some of those are blank. So I don't think it's quite 22. But you say we searched one of them. It's got a great name, right? Central record system feels like you've really, really, really done your job, but you've got a bunch of others. And so why isn't it just a paragraph or two? We've got others. We've got a personnel system. We've got an electronic surveillance system. We don't think it's in Why not close the loop to give everyone this sense of completeness that your search was adequate? And all you would need to do there is you wouldn't need to search them. You just have to provide a reasoned explanation for why, in the agency's judgment, that would be a waste of everyone's time. And if that's the case, then you don't have to search. But absent the explanation, it feels like something's missing. With respect, Your Honor, that is how I read the declaration. It doesn't say the CRS is an FBI system that has responsive records. It says the FBI system where responsive records to this request would reasonably be found. I read that to mean it is the only system where records responsive to this request would reasonably be found. And I'd emphasize the CRS is not just sort of one of these record systems. Your Honor's right. There are others. But it is commonplace, and courts have repeatedly found it adequate for the FBI to search the CRS in response to FOIA requests. That's just sort of, in mine run cases, that is what it is searched. So I, for example, I point the court to the Eastern District of Pennsylvania decision from 2017, Hetznecker versus NSA, that collects cases where courts have found CRS searches adequate. Let me back up. In Oglesby, the D.C. Circuit seminal case, the search was of the State Department central records system. They had a nice system that also bore a similar name. And the D.C. Circuit said, nice name, but you got to do more. Isn't that, can't we say the same thing? Nice name, but you got to tell us why your other record systems would have nothing. Otherwise, it's quite a bit to say, just trust us. It's so much easier to trust an agency if it's, trust us, here's the explanation, as opposed to trust us full stop. I understand, Your Honor. I just, I hate to harp on the point. I do think that this declaration says it is this system that is going to have the records. I think that is what is already in the record here. I think that's all the court could reasonably ask. Based on the definite, use of the definite article. Yes, and there's more than that, but I think that is the part that sort of most definitively says, this is the one. But it doesn't say, this is, if there were any documents relevant to the request, this is the only place they would be. There's nothing saying that. And are you saying that these other records systems that are listed, would anything that would be found there, would necessarily be found in the CRS as well? I'm not saying that anything that is in another record system would be found in the CRS, but I do think the declaration says, it is this, this is the FBI system where records responsive to this request would reasonably be found. That's the post remand declaration is at 745 to 746 of the JA. The pre-remand one is at 280 to 281. What led to missing the 9,000 pages of documents initially? How did they get missed? So, I want to stress that wasn't because of some deficiency in the CRS. What happened is the CRS search identified the correct case file. And then RIDS, the FBI office that does the FOIA processing, went to the Cleveland field office and said, please give us this file. And they got the file back and they thought that was complete. And it later emerged during the remand, when they got a referral from EOUSA, that the file they'd gotten from Cleveland didn't have electronic pages in it. FBI had to go get those from the I'm told by the FBI, they've changed their processes to do that better going forward, but that was what happened. And it wasn't because there was something wrong with doing the search in the CRS that that happened. So, you're over time. I have two questions and maybe my colleagues do too. The first one relates to the search of the deceased tax force agent. I'm blanking on her name, but as I understand it, the FBI said, you know, we're searching for her name through Viola, but didn't do a freestanding search of her name as a decedent. The B6 and the 7C concerns are way, way, way less. I think that's FBI policy. And so my first question comes down to why wasn't their search basically under her name only, unattached to Viola's name? And my second question is the bit of the cold call that I asked your colleague about residency. So if you wouldn't mind taking those in terms of, is Viola a resident for purposes of FOIA statute in the Western District of Pennsylvania? Yeah, I'm happy to start with the second one first, which is a good question. And there may be a government answer to that, but I don't have it today. And I'm happy to supplement on that if the court would like. On the question about Dawn Pacella and the search of her, the explanation that the FBI gives is that it doesn't search for records that are categorically going to be exempt under 6 and 7C that's supported by the DC Circuit's decision in Blackwell versus FBI. And that was the basis on which they didn't do a separate. But categorical, the categorical assumption doesn't apply in privacy concerns as I understand it when a person's deceased, right? I take the point about the relevance of the fact that she was deceased. I don't think that means there's no privacy interest, but it certainly diminished. And so it seems like in that instance, it would make sense to do the search and then assess the privacy interest as opposed to not doing any search based on the fact that everything would turn up would be exempt. So maybe there was a jumping of the gun looking too far ahead saying, we don't need to search because everything that we'd find is exempt. That's not a basis for not a search. Sometimes you have to do a search even if everything is exempt. And so I have a little bit of concern with that methodology because it seems to let the exemptions drive the search. And FOIA seems more regimented than that. The search happens then the exemptions. So I do think that were it not for this complication of the fact that she's deceased, it is proper for the FBI not to do the search for third-party records. The DC Circuit has again approved that in Blackwell in a very similar situation. We haven't ruled on that. I agree. We haven't let the exemptions drive the search though. I agree, Your Honor. And here, again, it is potentially relevant that she's deceased, but that's not a point a plaintiff has ever made. It's surprising. I thought you were going to say that the way the records are maintained, anything relevant to his request would come up under his name. It wouldn't be false under her name that you don't do individual name searches that way. That's what I thought you were going to say. So I'm surprised. Yes, that is generally true. So his request was for FBI 302s mentioning his name, including for Goffman and Rich, for documents concerning allegedly recorded conversations between him and Pacella or concerning Pacella's death, and for emails to the FBI mentioning him sent by Catherine Clover. So as to virtually all of these third-party records, yes, the request was for things directly connected to him and that all would have been found in his file. Except for the ones related to her death. I agree, Your Honor, that that request wasn't specifically tied for him and that the FBI's was we're not going to do the search because those are exempt under 6 and 7C. And again, plaintiffs have waived any argument that that was improper on the ground that she was deceased and therefore 6 and 7C applied with diminished force. All right. Thank you, Your Honor. Mr. Chen, I think you have three minutes. Oh, sorry. Sorry. Sorry. Sorry, Mr. Elliott, and that's all right. You have five minutes. Yes. Yeah, I have five. Good morning, Your Honors. May it please the court. My name is Jake Elliott, and I'm here on behalf of the Appalachian-Cuyahoga County Mortgage Fraud Task Force. I'd like to briefly address the issue of whether the lower court below properly considered matters outside the pleadings in making its decision to dismiss the task force from this FOIA case. By way of background, the document that was relied upon was a memorandum of understanding that was submitted on briefing on a 12B2 and a 12B6 motion. The document sort of sets forth the establishment of the task force itself. That's pursuant to an Ohio Revised Code Statute 17702, which permits this Ohio Organized Crime Investigations Commission, an arm of the Ohio Attorney General's Office, to create a task force to investigate various crimes throughout the state of Ohio. The document, which is found at the record, page 433 going on, lists a number of signatories, all of whom are local Cuyahoga County, Ohio agencies, police departments, the county sheriff, and the like. Are you saying it's proper that these matters were considered by the court or not? These were properly considered by the court, and the reason is that on a 12B2 motion challenging the court's personal jurisdiction over the task force, it's the appellant's obligation to show by a preponderance that that jurisdiction is proper. How can jurisdiction be proper if the task force was never served with a FOIA request? Well, that's an issue of the court's subject matter jurisdiction, and the assertion that it's a waiver obviously doesn't apply to that sort of challenge. To go further, there are numerous ways that Mr. Viola could have requested task force documents without attempting to use the federal statute. Ohio has its own Public Records Act. But once he brings a suit under the federal statute, he has to satisfy that the entity has failed to comply with a FOIA request. That's correct, Your Honor. I don't agree with that. So let me just press on that. So you've never raised the fact that there's been no FOIA request submitted. It seems to me that the nicest and the easiest way to get over this is to say we aren't responding to FOIA because you never served us with a request. That's fair. Like that strikes me as really, really not. Now, your opponents suggest that that's an exhaustion argument that can be waived. You seem to suggest it's a jurisdictional argument. But I guess my question is jurisdictional arguments are really, really hard to come by in this era with the Supreme Court. And so not everything that is mandatory is jurisdictional. So let's say it's mandatory. I think it has to be. I don't know why you didn't raise it, but there was a lot going on, right? So let's say it's mandatory. Why is not everything that's mandatory jurisdictional? Elements of an offense are mandatory. That doesn't make every element jurisdictional. So why, in your view, you agreed with Judge Rendell, I think that was probably smart, but you agreed with Judge Rendell that it's jurisdictional. I want to press you on that. Why would that be jurisdictional as opposed to simply mandatory? And can you... The submission of the FOIA request. Why is the submission of a FOIA request a limit the subject matter jurisdiction of a federal court as opposed to being a necessary element of a claim? Well, he's not even exercising the statute against the mortgage fraud until the FOIA request is made. So it's hard to say that any provision of the statute itself is going to apply without a request. That's mandatory, but why not have a federal court say, I have jurisdiction to decide this. No FOIA request, no claim. That's the exercise of jurisdiction. It's not saying no FOIA request, don't have any jurisdiction here. Sure. And to some degree, Your Honor, that's sort of what we did by failing to raise the argument in the first place. I'd like to... I mean, it's hard to raise the argument because you moved on 12B6 and 12B2, so you're not trying to inject too, too, too much into the record. Correct. And so I get it, but you could say the complaint never alleges that they served a FOIA request on us. And that feels like a pretty good 12B6 motion. Well, on the 12B6 issue, you know, I think more importantly is just the fact that, you know, a Cuyahoga County entity here has been hailed into a Pennsylvania court. You know, obviously there are some issues with the adequacy of the pleadings. And if the district court relied upon those, relied upon those documents in support of its 12B6 motion, that could be problematic. But on the same hand, there is a personal jurisdiction issue here where the court is permitted to look at those same documents and determine whether or not personal jurisdiction attaches and whether or not Mr. Viola has met his burden. I see my time has expired. If there are no further questions... I only have one question, and that's on the cold call question about, do you have any thoughts on Mr. Viola's residence, which I think is jurisdictional under FOIA, when he lived in Ohio, was incarcerated in Pennsylvania, served the FOIA request, but then returned to Ohio. Is he a resident of Pennsylvania for purposes of invoking the jurisdiction of the Western District of Pennsylvania? Yeah, respectfully, Your Honor, I would mimic my other appellee's response in that it may be something worth looking into, but we haven't really had that opportunity. Yeah, we'd like you to find out and tell you no. Okay, all right. Does anyone have any further? No? Okay. Mr. Chen, I think now is your three minutes. Thank you, Your Honor. I'd like to begin with two quick points on relating to the task force defendant, and that's first on this maybe jurisdictional, maybe exhaustion issue. Our understanding is that this circuit treats the failure to make a FOIA request as administrative exhaustion point, which can be waived if not raised by the party, as does the D.C. Circuit, and we'd be happy to address that issue. Is there a case for that proposition? Your Honor, in the Third Circuit, the case is called McDonald, and we cite that in our reply brief. I've seen that. Okay, so my question is this. It seems like it would be a little premature to deem it overall waived, right? Maybe waived for purposes of this appeal, but the district proceeding is still going on, so maybe they'd like to raise that again at a summary judgment stage or something along those lines. It's not they haven't lost that opportunity because they didn't raise it at their most earliest possible motion opportunity, have they? Your Honor, we think they have. They've litigated up to this point without ever addressing this issue, and I think that with respect to... But if we remand and they get a chance to make a record, why don't they just say we've got an exhaustion problem? You don't have to challenge every deficiency through a motion to dismiss. Sometimes people don't even file one. They just answer, and then they go for it. So if they were to answer, and when they list the affirmative defenses in the answer, say, oh, one of them is failure to exhaust, you aren't saying that's waived, are you? Your Honor, I'm sorry. I don't have an answer for you on that point. We'd be happy to take another look at that and submit additional briefings. But that would be a bold proposition to say that if you don't raise something in the 12b6 motion, an affirmative defense in your 12b6 motion, don't bother ever raising it as an affirmative defense in your answer. I don't think there's too much case law saying that. That could be the case. Fair enough, Your Honor. In McDonnell, a FOIA request was served, and the agency didn't respond, and then the claimant brought suit. And that's the context in which there was a failure of exhaustion. But a FOIA request clearly served in that case. Your Honor, with respect to the Justice Department defendants, we would just like to underscore again the point on the search, which is that prior to remand, the FBI submitted an affidavit saying it had conducted a reasonable search. Of course, we discovered when this case was appealed, there existed some 5x more documents contained within some systems that it had inadvertently failed to search. And then it came back and said, we've conducted the same search, and it's reasonable. Now, with respect to the affidavits that submitted on that matter, we still haven't received a Vaughn index for the first tranche of documents that was the subject of the original appeal before this We think that that alone, under this Court's precedent, for example, Davin, is enough to at least vacate summary judgment with respect to those documents, although we would argue that the subsequent Vaughn index does not do much better. Do you agree with Judge Phipps that there are other systems that should have been searched? And if so, have you made that claim? And what are those systems? Your Honor, we do agree, and that's because it's the government's burden to show, of course, that it searched all places reasonably likely to contain responsive materials, and we agree with Judge Phipps. I didn't hear the last part of what you said. It's searched. It's the government's burden to show that they've searched all places likely to contain responsive materials. They must show that beyond a material doubt. And as Judge Phipps has pointed out, the fact that they searched one place likely to contain such responsive documents does not indicate that they've searched all places. This Court has been clear that the niceties of a particular federal agency's internal filing system does not preclude it from satisfying the burdens that the FOIA statute places on it. And at the very least, without a further explanation of, here are other record systems, and they do or do not contain such responsive documents. Again, we think a conclusion on this, that the search was reasonable by the District Court was premature at this time. I'm sorry, because you're on rebuttal, but I have one last question, if you'll indulge me. And that is, on the search of Dawn Pescella, I think is the name, do you think, do you concede that the FBI is correct that because she was dead, they were fine not doing any further search due to privacy concerns? Or do you think that maybe her death would mitigate those privacy concerns? No, Your Honor, we don't agree with the FBI here. We think that the proper procedure, of course, would have been to conduct the search, discussions about whether or not the privacy exemptions apply would be properly reserved for after the search has been conducted. And then you put these documents into your bonnet and indicate why they were or were not properly withheld. Thank you very much. Thank you, Your Honor. Also, we'd like to recognize that we appreciate Yale Law School and the devotion that's gone on to this case. Very, very much appreciated. Very, very well done. For a law student, you have remarkable poise. Without denigrating the many clerks in the room, very, very poised presentation. I think we were hard on you because you were so good. We did not pull the punches, so this was the real deal.